www.kehmoilco.com Good morning, everyone. We'll start with the first case on the docket. Call the case of Kehm v. Texaco, Inc. Your Honor, my name is Tom Farnan, and I represent the appellants Kehm Oil Company and Golden Oil Company. I reserve five minutes for the trial. Thank you. Good morning, Mr. Farnan. Thank you, Your Honor. I say I represent Kehm Oil Company but I'm really here representing George Kehm. Up until 2006, June of 2006, George Kehm, who's in his mid-eighties, would get into his gasoline truck every day and drive out to his 28 gas stations and fill, supply them with gas. I personalize this not to gain any sort of sympathy, but because this is a unique case and this is unique law. Would the PEMPA, or however you want to pronounce it, relationship be dependent on who gave your client the right to use the Texaco trademark? Does it require more of a business relationship and dealings in order for PMPA to apply? I don't know what could be more of a business relationship than an unbroken 40-year relationship to use the Texaco trademark. This unbroken 40-year relationship. Well, you say unbroken, but at the end, wasn't Motiva really the only one that licensed it to him? No. Here's what happened. Our last contract was in 1998 with Star Enterprises. Star Enterprises was a Texaco company. That was supposed to be a five-year contract. At some point during that contract, if you look into your appendix at 639, my client gets a notice from Star Enterprises, that somehow the contract has been assigned to Motiva. Right. Now, if you look at the letterhead of that letter, it shows that... They had the right to assign it, didn't they? It was in the contract, right? Right. They have a right to assign it, but they do not have a right to assign it to a company that cannot renew it. They do not have a right under the PEMPA to assign it to a company that cannot renew it. Where do you base that on? I base that on the Barnes case. The Fourth Circuit's decision in the Barnes case. Does that mean once you're a franchisor, you become a permanent franchisor? Not if you're dealing with a Starbucks franchisor, not if you're dealing with a McDonald's franchisor, but in the petroleum context, it is very difficult by congressional mandate to cancel a franchisee. That sounds like once a franchisor, always a franchisor. That doesn't make sense. That doesn't make sense in light of contracts that have very specific periods of duration. It does make sense, Your Honor, if you look at the law and the reasons for the law. Congress has determined to treat petroleum franchisors and franchisees differently than anybody else. And Congress determined in the 1970s to permit cancellation of a petroleum franchise only under limited circumstances. No one is here today contending that Texaco is in possession of any of those limited circumstances to cancel my client. I hate to interrupt you, but assuming what you're saying is true and PMPA would be violated, wouldn't the time to speak up be the time that letter came across? More than a year of that? No, Your Honor. This letter, my client is sitting at his desk. He gets this letter. He has had several contracts throughout the years, and these contracts are identified in my complaint with various entities. Only early on are the entities identified as Texaco, Star Enterprises, all different sorts of entities. This letter comes across his desk from Equiva Services, Chanel Texaco, and Saudi Amoco working together. At this point, Motiva is still a part of Texaco. At some point, Motiva becomes a part of Shell. The Barnes case from the Fourth Circuit, first of all, your own case, the Sun case, says the effect of the PMPA is to create a presumption that any termination of the franchise is unlawful. This rule is different than anything you've seen before in the area of franchising. It does create, you'll admit though that it does expressly authorize the termination of a franchise if you no longer have the power to grant the franchise. It says that, right? Right. Okay. So if we were to find that Motiva properly had the authority to issue the franchise, I understand your theory, but if we were to determine he was dealing solely with Motiva, there's no question that they would have been authorized to terminate under the terms of the PMPA, correct? No, because we never had a franchise relationship with Motiva. Our franchise relationship was with Texaco. And you can see that in the Sixth Circuit's case, Consumer Petroleum versus Texaco. Let me press this point a little bit more. You have a claim against Texaco. You have a claim against TRMI. You have a claim against STAR. You don't, you didn't file a claim against Motiva. But the contract with Texaco terminated December the 13th of 1987. The contract with TRMI terminated in 1990, 16 years before the suit was filed. And the contract with Texaco terminated 21 years before you filed a complaint. And then the contract with STAR, the other defendant, terminated in the year 2003, three years before you filed a complaint. How does your complaint survive with a one-year statute of limitations when all of these contracts terminated well before the complaint was filed? Because the franchise relationship survives until the signs are taken down. But the franchise relationship term refers you to the meaning of a franchisee. And a franchisee, by the very meaning of the term, requires the existence of a contract. You did not have a contract with any of these defendants. With due respect, Your Honor, that's not what the Sixth Circuit said. In connection with the not, and this is the Consumer Petroleum case versus Texaco. What case are you referring to? Consumer Petroleum versus Texaco. That argued that there was a de facto franchisor-franchisee relationship? I mean, is that what you're arguing here, that that's what you have? That there was a franchise relationship as the Act gives that term. Here's what the Sixth Circuit said. Doesn't franchise relationship define a period or a situation that exists after a franchise agreement terminates? Isn't that what franchise relationship refers to? A franchise relationship refers to the reality that if someone has a Texaco sign out front and they're selling Texaco gasoline, they have a Texaco franchise. No matter what the contracts are, no matter what the legalities are that grant that franchise, they have a franchise relationship. Is that how it's defined in the Petroleum Marketing Practices Act? Yes. The Sixth Circuit, in connection with the non-renewal provision of the title, the term franchise relationship is utilized. The term is utilized for two reasons. First, in the renewal context, the contract which constitutes the franchise may no longer exist and the term franchise relationship is utilized to avoid any contention that because the franchise does not exist, there is nothing to renew. They cite a case. The only case cited by consumers that offers an interpretation of the franchise relationship in the PMPA is Whistler versus Texaco. In that case, the distributor entered into a series of separate agreements with Texaco over the course of 12 years. Each agreement would renew to become effective immediately upon the expiration of the prior agreement. The district court held that the frequent and temporary renewals constituted one long-standing franchise relationship subject to the non-renewal provisions of the PMPA. The Whistler case that they cite, there is no dispute that Whistler's activities in relation to Texaco have continued largely as they were under the 1969 franchise agreement and that these activities would constitute a franchise relationship under the PMPA unless there was some exception for relationships which had become non-contractual and had been perpetuated only by the mandatory allocation controls. Whistler arranges for the distribution of Texaco gasoline and resells it to service stations which in turn market it under the Texaco trademark. That's what my client was doing until June 30, 2006. He was a Texaco franchisee. He had received an indication from Motiva a couple of years before that at some point Motiva would not hold the Texaco brand any longer. My client understood that. My client did not believe that Motiva would hold the Texaco brand. Motiva at that point had been sold over to Shell. And there is a side issue here. When Chevron merges with Texaco, whether it was an acquisition, when that occurs, Shell Oil Company objects before the FTC and antitrust grounds and Texaco and Shell, Chevron and Shell, enter into an agreement whereby the Texaco brand is licensed over to Shell for a number of years. Let me, your time is up. We'll just extend a couple of minutes if we have further questions. But it seems to me that under your theory, if we adopt your theory, there's virtually no meaning to a five-year franchise agreement because under your theory, this can continue forever. Maybe you could respond to that. Your Honor, to not adopt my theory, I think you'd have to create a conflict with the Fourth Circuit, the Sixth Circuit, and with the presumption that exists in your circuit. Well, I don't think so. I think we just have to look at the Petroleum Marketing Practices Act and how it defines a relationship and how it defines the word franchise. Franchise means, according to the Act, if I understand it, it means a contract relationship between a distributor and a retailer. And the case I just read to you said it doesn't, the word franchise relationship is used and not contractual relationship because it's not about the contract. It's about the signs out front. It's about the reality of it being a franchise. Okay. Thank you. Can I ask you a question about it? Yes. It's a related topic. It's your state law claims. I noticed that are they really not being pressed in this appeal? I see the brunt of your argument is the Act. What about the state law claims and the preemption? They are being pressed, Your Honor. I do agree that the PMPA preempts state law claims, and I do agree that this is a PMPA case, and I interpret the PMPA to preserve my client's rights. To what extent does it preempt? Totally or just as determination? How about breach of contract? Could you have that? That sort of relates to termination, doesn't it? I think it was Congress's intent to take matters relating to the termination of a franchise, of a dealership. Well, the O'Shea case helps you, doesn't it? It says that contract claims survive preemption. The O'Shea case helps you, doesn't it, from our circuit? I'm not pressing a contract claim here, Your Honor. What I am pressing is a claim under the Petroleum Market Act. Well, that's what I asked you, yes. I just wanted to know what's being called upon to decide. So you're not pressing state law. I thought you had a breach of contract claim, promissory staple, civil conspiracy, interference with contract relation claims. And I agree as a matter of principle. Do you or do you not have a breach of contract claim? I believe that we do, Your Honor. Yes, we do. So you are or are not pursuing your statement? We are. Okay. Thank you. Mr. Stubbs? I think we understand his theory. We'd like you to address that, sir. May it please the Court? Sam Stubbs, Pillsbury-Winthrop Shaw Pavilion from Houston, representing all the appellees. An analysis of this case begins and ends with the definition of the franchise relationship under the PMPA. Of the nine original entities that the appellants sued, only one of them could have been the real franchisor in this case. Motiva? And that was Motiva. We have outlined for you on page 21 of our brief case after case that holds that a franchise relationship under the PMPA requires a direct contractual relationship. A quote from the Hutchins v. Eli Roberts Oil Company, 11th Circuit, 1988, says, quote, we agree with every court that has considered the question and hold that there can be no franchise relationship under the PMPA in the absence of some direct contractual relationship. But doesn't Congress contemplate that a relationship can continue after the termination of an agreement? Yes, Your Honor, it does. And it contemplates that the relationship will continue in the event that the contract expires. In other words, if the parties do not do anything to re-up the contract, to renew the contract, it will expire, at least if the contract says it will expire. But the relationship will continue, apparently for one year, a time period where the statute of limitations allows the franchisee to contest the non-renewal. Is that what the Act specifically states? Yes. That a franchise relationship can only exist for one year following the termination of a contract? It is not so articulated, but a reading of the typical PMPA case finds that most of the challenges of a termination or a non-renewal take place at the time that these contracts come to an end, whether they come to an end by their own terms or the marketer tries to terminate the contract. That's when the franchisees come to court and ask for relief. But my point is, can you have a franchise relationship without an explicit contract, which is part of Mr. Farnum's argument? No, you cannot have a franchise or a franchisee relationship without a specific contract. How about the consumers case? In the Whistler case, I don't think there was a contract in place in those particular matters. If I may, the consumer case is distinguishable because the relationship was with one and only one franchisee. In the case of Texaco Inc., the Texaco Inc. announced, as it had a right to do, that it was withdrawing from the Detroit area and at that point entered into a PMPA-sanctioned interim franchise agreement. What the court ruled in that case was that the interim franchise agreement had a special relationship independent of the prior franchise and that the dealings between the parties would be governed by that special relationship, by that interim franchise agreement and not by the previous prior franchise agreement. So what the court ruled was that there was a statute of limitations that applied to the previous franchise agreement and that had been missed. And that if plaintiff was to obtain any damages, it would have to come from the breach of this interim franchise agreement, if any. They sent the case back only so that the plaintiffs could re-plead on the question of whether the interim franchise agreement had been properly entered into. But it did not continue the relationship. It continued the relationship as it stood under the interim franchise agreement. There is no case that takes a former franchisor and allows the franchisee to skip over an 8-year period or, for that matter, a 1-year period or any period and go back to a previous franchisor. In this case, it's undisputed in Judge McVeary's use of records that were provided by the appellants to establish the relationships Judge Fuentes mentioned a minute ago. Twenty-one years ago, there was a relationship with Texaco, Inc. prior to its bankruptcy. And then there was a franchisee-franchisor relationship with Try Me. And then there was a relationship with a joint venture, Star Enterprise, not a Texaco company as it has been described, but a joint venture of which Texaco was a participant. Then there was a relationship with Motiva at a time when Texaco was one of the joint venturers in Motiva. Then Texaco was removed from that joint venture in Motiva. And Motiva went forward as the only entity that was the franchisor dealing with Mr. Kim and his company, Golden. Does a franchise relationship ever serve as a basis under the Act for a suit, or do you always need a franchise contract as a premise for a suit under the Act? I have been unable to find a case where there was not a franchise contract. I suspect that there are several cases where the contract, by its own terms, came to an end and then was contested by the franchisee. There's no case where a franchise relationship came to an end and eight years later was contested by a franchisee. And we believe that that's because the case is probably dispositive on the fact that there's no relationship between any of the appellees and the appellants. But if there were relationships between some of the appellees and the appellants, those clearly are barred by the PMPA's statute of limitations. When Texaco and Chevron merged, did Chevron completely take over Texaco's operations and marketing? Does Texaco still independently exist? Yes, your honor. Texaco is its own corporation with its own board of directors and has kept the formalities. It's been careful to keep corporate formalities in place. Does Chevron do the operations and marketing for Texaco? I'm not positive I can answer that straight up. I think that Chevron or one of the Chevron entities, for example, would hold the trademarks belonging to Texaco. Mr. Stubbs, I mentioned the O'Shea case, O'Shea v. Amico, to Mr. Farnham. And in that case, we explicitly stated that the PMPA preempts only those state laws that regulate the grounds for, procedures for, and notification requirements with respect to termination. We also said that contract claims in no way involve procedures for notification requirements with respect to termination. So we allowed contract claims to proceed. Doesn't O'Shea significantly undercut the district court's decision as to preemption in this case? I think it might if the facts weren't different on this appeal. The appellants have intertwined all of their causes of action, including the contractual claims, with the termination or non-renewal of this franchise. You can read their second amended petition. Judge McBury gave them the opportunity to re-plead their petition. And in their petition, even the contract action is carefully intertwined where their damages flow from the termination or non-renewal of the franchise relationship. So if Motiva had done something incorrect in terminating this particular franchise relationship, that perhaps that issue may be raised again. But I doubt it. Those issues are behind us. Motiva admitted that it was the franchisor in this case. Motiva filed a summary judgment. Judge McBury sustained that motion for summary judgment. And the appellants have dismissed Motiva and have not proceeded with an appeal against Motiva. So while there may be a way for the contract claims to have been pleaded, these were not pleaded in that way. Any further Mr. Stubbs? I have a couple more questions. Is your position based on your adversary's approach to these state law claims, are they still viable in the sense that, is the argument waived about preemption? Do you take a position on that? I'm not sure I actually looked at it that way. It doesn't seem that your adversary has directly argued that really anything with regard, well he's mentioned it in his brief, but do you feel that there's a waiver, that he's let those ones go in lieu of the PMPA claims? Yes, I think most of the PMPA cases that say state court claims that are intertwined are preempted. Virtually all PMPA cases say that state court claims that are intertwined are preempted. I'm just asking if you think he's waived his right to bring up the state law claims. In a sense I guess he has. It strikes me Chevron is a national corporation with subsidiaries doing business in Pennsylvania. I'm trying to remember the justice that used this word of art, but isn't it foreseeable they might be hailed into court here? They don't do business here, and by virtue of the fact that they have a nationwide reputation, it wouldn't be terribly surprising to see people hailed into court here. When they are hailed into court here, they for the most part say, but we don't do business here. Somehow I thought you'd be saying that. Do you think Mr. Barnes' activities implicate Chevron? Is it sufficient to bring him into court? I don't believe so, Your Honor. He was not an employee of Chevron Corporation. He was an employee of another subsidiary, and his actions in no way bound Chevron Corporation. So we can get that straight. He's an employee of Chevron Products, which is an unincorporated… Division of Chevron USA, Inc. Division of Chevron USA, okay. Thank you, Your Honor. Thank you, Mr. Stubbs. Very quickly, Your Honors, in our exchange, I did not mean to waive anything, and I don't waive anything. I do take a very broad view of preemption. If you tell me my broad view is… Mr. Stubbs raised an interesting point. Even though contract claims are not normally preempted by the Petroleum Marketing Act, your contract claims address essentially the very same claims. In other words, your breach of contract claim is probably a contract claim against Texaco for terminating the franchise agreement. Here's what happened, Your Honor. Intertwined. Isn't it intertwined? There are some elements, from my view, intertwined, but here's what happened. In the spring of 2006, Barnes comes to Pittsburgh, meets with George Chem. They enter what George Chem believes to be an agreement to continue with the Texaco franchise. He sells some gas stations, and he starts to act in accordance with that agreement. He's very surprised when later Texaco takes the position that he's not going to be a franchisor. There was no explicit agreement between Chevron and Chem Oil. Yes, there was. It wasn't written, but I think it was explicit. There was an agreement. For Mr. Stubbs to get up here and say that the Texaco franchise in Pittsburgh came to an end eight years before June 30, 2006, I think points out the problem with his argument. If you tell Mr. Chem that the franchise ended on June 30, 2006, what was happening on June 29? They had 28 stations with Texaco signs, taking Texaco credit cards, everything being processed through Texaco. There was a Texaco franchise in Pittsburgh up until that date. We received a letter from Chevron in July of 2006 after we unsuccessfully saw an injunction, and this is the first time they're telling us, take your signs down. It said Appendix 77. If we had been operating for seven, eight years as a Texaco franchisee without the right to do so, wouldn't we have gotten this letter before? When I first got this case, I'm not an oil lawyer. I confronted this statute for the first time, and I had the same reaction as I think you do. It is somewhat counterintuitive. It's different than how other franchises are treated, but it is the law as Congress drafted it. Upon reflection, there are reasons that Congress regulates oil companies differently. There's a breach of contract intertwined, isn't there? Yes or no? Yes. Okay, but I don't know what you mean there. Intertwined? The whole thing is intertwined. It's a term of art, sir. The question is, is it preempted? Breach of contract, let's just deal with that, as Judge Fuentes asked you. I don't believe it is preempted. Well, how could it deal with anything but the termination? There was an agreement reached orally in the spring of 2006 to continue this, and then it was not continued. So maybe it was an oral contract, aren't you still dealing with the termination? Right. I believe that your case law is very broad on termination or on preemption. Whether or not I'm going to concede to this word, I'm not sure. That's going to be up to you, but it's as pled and as argued. The civil conspiracy claim that you have, is that related to all of the defendants that you have sued in this case? Conspiring to keep you out of business? The notice pleading requirements under the federal rules, yes. We haven't done any discovery here. We went right from the injunction to summary judgment. So a lot of this stuff hasn't been fleshed out. But it does appear to me that there was some planning that took place in the spring of 2006. Who was involved in that? What was said or done? Your contract at the time was solely with Motiva, wasn't it? Our contract with the time had been with Star Enterprises. Star Enterprises had been assigned to Motiva, and Motiva was later sold to Shell. But I think it's very important for you to look at the Barnes case, where the Fourth Circuit says, you cannot assign one of these contracts in a way that has the effect of overriding the requirements of the PMPA. You can't do that. Well, the civil conspiracy count, isn't that intertwined with the termination? You know, I'm not sure about the term and how you're using it. I would say in time sequence, it's all leading up to the same event. You know, it's very honestly and fairly pled in my complaint. Want to finish up your point, Mr. Foreman? Yes. I would urge you to look at the Fourth Circuit's case in Barnes, because the Fourth Circuit says that an oil company cannot avoid the requirements of the PMPA by assigning a contract to a company that has no ability to renew it. If that's what they said happened here, that it was given to Motiva, and Motiva would no longer have the ability to renew it, that doesn't... Is that what happened in Barnes, that a contract was assigned to a company that had no ability to renew it? Yes. I thought it was assigned to a company that then changed it and elevated or increased the fee to purchase oil, and that's what the court found was wrong. So if that is correct, I don't know how Barnes helps you. There are two decisions in Barnes, and I would refer you to the second one. To conclude that Anderson is the franchisor would gravely threaten the viability of the PMPA. Anderson is in the position of Motiva here, the assignee. Such a ruling would theoretically permit large refiners and distributors like Gulf effectively to terminate their relationships with small retailers like Barnes simply by assigning the remainder of the franchise term to another smaller company. If that's what they've done, they've acted in violation of this law. We'll keep that case in mind as we consider this case. Very important. Thank you very much. Mr. Farnan, thank you very much. Thanks to all counsel for the arguments, which were very well presented.  Thank you.